## No. 5874.

## G. B. WALKER v. THE STATE.

FALSE IMPRISONMENT—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for false imprisonment, inasmuch as it fails to establish any connection of the accused with the commission of the offense and proves merely that he did not interfere to prevent others from committing the offense.

APPEAL from the County Court of Hood. Tried below before the Hon. H. F. Berry, County Judge.

The information jointly impleaded the appellant and Lee Walker, Henry Walker, Bill Moore and Waddy Moore for the false imprisonment of one William Barnett by "restraining him from removing from one place to another as he might see proper." The appellant being alone upon trial was convicted, and his punishment was assessed at a fine of ten dollars.

William Barnett was the first witness for the State. He testified, in substance, that now, and at the time of the alleged offense, he lived in the county of Parker, but within two or three hundred yards of the Hood county line. His farm and that of the defendant adjoined, being separated only by a wire fence. On the morning of November 13, 1886, William Moore and Waddy Moore, two of the parties jointly indicted with the accused, came to witness's house to see Sam Boyd, one of the witness's tenants, about some cotton which either Boyd or his wife charged had been stolen from them by some children, the brothers and sisters of the said William and Waddy Moore. Witness at that time was at his horse lot, about forty yards distant from the fence at which Boyd met the said Moores and talked to them about the cotton matter. The witness could not hear what was said, but, after some talk, the Moores rode off towards their father's house, apparently satisfied. The father of the Moore boys was then a tenant on the defendant's place, and lived in a house about two hundred yards west from defendant's house. About the time the Moore boys reached their father's house, the witness and his said tenant Boyd started to the witness's cotton patch, traveling the field road, inside of witness's field, which paralleled the wire

fence which divided the fields of the witness and the defendant. At that time Lee and Henry Walker, the two parties jointly indicted with the defendant, were working on a new house inside of the defendant's field, and about thirty yards from the dividing fence. About the time that witness and Boyd had accomplished a hundred and fifty yards of the way towards witness's cotton patch, witness observed William and Waddy Moore walking from their father's house to the new house on which Lee and Henry Walker were at work. They left their horses hitched at their father's house. The distance from the witness's house to a point opposite the house on which Lee and Henry Walker were at work was between four and five hundred yards. About the time the witness and Boyd reached that point (opposite the said house), being then in witness's field, and on their way to the witness's cotton patch, the said Henry and Lee Walker and William and Waddy Moore—Lee Walker being a little behind the others—come to the fence which, as stated, paralleled the road then being traveled by witness and Boyd. When they reached the fence, being then on the defendant's side thereof, and witness and Boyd being on witness's side, Henry Walker said to witness: "By God, what I say once I say again, and I don't take it back!" About this time the witness observed the defendant and his wife coming from the direction of the defendant's house. Defendant's wife turned back, but defendant came in a rapid walk—almost a run—to the fence near which the witness was standing. He had a knife in his hand, and looked very angry. His face wore a scowl or frown, such as witness had never seen on it before. Witness stepped back from the fence to get out of the defendant's way, and spoke to defendant, but defendant refused to speak to him. Defendant stood at the fence for a few moments, then turned around, walked off a few steps and sat down.

Henry Walker then proceeded to curse the witness "for everything he could think of"—witness could "not say what he (Henry) did not say." Witness then explained to Henry Walker what he had said (about the cotton matter), and it appeared to partially satisfy him—at all events he cursed and abused witness with less violence. About this time William Moore began to curse and abuse Boyd about the cotton matter. He told Boyd that "d—d lies" had been told about that matter, and that he was not satisfied, and threatened to whip Boyd. Boyd told William Moore that if he was not satisfied about the cotton

transaction, that he, Boyd, would pay him back his money. Moore refused to receive the money back, but continued to curse Boyd about lies which he charged had been told about the cotton either by Boyd or Boyd's wife. About this time Waddy Moore crossed the fence into witness's field, and proceeded to curse and abuse witness about what witness said or should have said about the cotton transaction between the Moores and Boyd. By this time witness and Boyd had advanced a short distance down the road. Lee Walker then crossed the fence into witness's field, and got in front of witness, at which time Waddy Moore was directly behind witness. Lee Walker, flourishing a hand saw, then said to witness: "God d—m you, you hold on! You d—d old black son of a bitch, I want to talk to you some." Continuing to flourish his hand saw, the said Lee Walker then cursed and abused the witness violently, accused him of swearing to lies in court, and of telling lies on him and his people. He held his saw over witness, and threatened to split witness's head and kill him if he, witness, did not stop and listen to what he had to say. He forced witness to stand for thirty minutes and submit to abuse, curses and villification, and finally to sign a paper which he termed a "lie bill." During the time that Lee Walker was cursing and abusing witness—Waddy Moore cursing and abusing him at the same time—the witness walked perhaps two rods from the point where Boyd and William Moore were quarreling. William Moore cursed and abused Boyd, but said nothing to witness, and did not cross the fence into witness's field. William Moore's talk was to Boyd about the cotton, and they appeared to settle that matter.

Lee Walker did not touch the witness. A cross fence on the defendant's place intersected the fence which divided the fields of the witness and the defendant at a point near where Lee Walker stopped and cursed the witness. The new house being built by the Walkers was in the defendant's field, not more than twenty or thirty yards from the intersection of the two fences. After the cursing of witness by Lee Walker and Waddy Moore, and after Waddy had crossed back into defendant's field, Lee Walker, still remaining on witness's side of the fence, wrote out a paper which he called a lie bill, and witness, under compulsion, and in fear of his life, signed it, and Boyd and the two Moore boys signed it as attesting witnesses. Lee Walker then said to witness: "God d—n you, this is too good for you! I know what I ought to do for you, and if you say you were

forced to sign this lie bill I will go with you to your house or any where else and let you sign it." Witness was overpowered, and, being afraid, said but little to the several parties who perpetrated this outrage upon him. After the signing of the "lie bill" and the withdrawal of the Moores and Walkers, the witness went out to his cotton patch to work, and Boyd returned to his home on witness's place. The defendant did not say anything, nor did he do anything except to come to the fence with a knife in his hand and look angry. He did nothing whatever, nor did he attempt to do anything to prevent or stop the outrage upon witness. Witness met J. B. Hastings some time after this occurrence, and related it to him just as he has stated it on this stand. He may not, however, have told him that defendant had a knife in his hand when he came to the fence.

Sam Boyd testified, for the State, that he lived on Mr. Barnett's place in 1886. On the thirteenth day of November of that year William and Waddy Moore came to Barnett's place and had a talk with witness about some alleged stolen cotton, which talk resulted in the settlement for the time of the dispute about the cotton. The Moore boys then rode off towards their home on the defendant's place. The witness and Barnett then started to the latter's cotton patch, traveling the road which ran parallel to the fence which divided the fields of Mr. Barnett and the defendant. When they reached a point opposite a new house which the Walker boys were building on the defendant's place, about thirty yards from the division fence, the Walker boys and the Moore boys; Lee Walker being a few paces behind the others, intercepted the witness and Barnett, not, however, crossing the fence. Henry Walker told Barnett that there was a mistake or misunderstanding, or something of the kind, about some statement made by Barnett as to the Moore children stealing the Boyd cotton, and that he proposed to have it straightened up. Barnett then told Walker what he claimed to have said about the cotton matter, and that appeared to satify Henry Walker. William Moore then proceeded to curse and abuse the witness. He said that he was not satisfied about the cotton, and witness proposed to return him the money paid for the cotton. He refused to take the money but continued to curse and abuse witness about what witness's wife was alleged to have said about the matter. Henry Walker said nothing more after he stopped cursing Barnett, and did not cross the fence. Lee Walker, however, did cross the fence. He then told Barnett to "hold up," and that

he "had something to say" to him.   He then proceeded to curse Barnett for swearing to lies and telling lies about the cotton transaction.   Waddy Moore also crossed the fence, and cursed and abused Barnett, but witness, who at that time was talking to William Moore, did not understand what he, Waddy Moore, said to Barnett.   During the quarrel mentioned, the defendant came to the fence near where the parties were, stood there a few minutes, and then sat down on the ground a few steps distant from the parties.   He did not cross the fence, nor did he say or do anything, either to encourage or prevent the difficulty between Lee Walker and Barnett.   Lee Walker finally asked the witness for a pencil and paper, and inquired of witness the day of the month.   Defendant told him the day of the month, and Lee Walker wrote out what he termed a "lie bill," which he required Barnett to sign.   About that time witness started home but was called back by Lee Walker who told him that he must witness Barnett's signature to the "lie bill," and attest it.   Witness and the Moore boys signed that document as witnesses. When the defendant came to the fence he had a small open pen knife in his hand.   Witness thought nothing of his having the knife in his hand, as it was a habit of his to carry the knife about, whittling sticks.   Defendant talked to witness at the fence.   He did not talk like he was mad, and if he was mad the witness did not know it.

The State closed.

I. B. Hastings testified, for the defense, that he had a talk with William Barnett a short while after the difficulty he had with the Moores and Walkers.   Barnett told witness that defendant, with a small open knife in his hand, came to the fence during the difficulty, but that he neither said nor did anything.

No brief for appellant has reached the Reporters.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE.   This is a conviction for false imprisonment. Appellant, Lee Walker, Henry Walker, Bill Moore and Waddy Moore were jointly indicted.   Appellant was tried separately, convicted and appeals here.

We have given the statement of facts a careful examination, and the conclusion reached is that the evidence fails to connect appellant with the commission of the offense for which he stands

---

Statement of the case.

---

convicted, with reasonable certainty; and that to sustain this conviction would be a dangerous precedent.

The burden was upon the State to prove that the acts and declarations of the defendant constituted the offense charged. Proof that he did nothing to prevent others from the commission of the offense did not tend to show inculpatory facts, and hence the defendant's objections to such evidence should have been sustained, under the facts of the case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*